UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEDI LOU GUEST, | ) |
|       Plaintiff, | ) |
| | ) Case No: 15 C 2843 |
| v. | ) |
| | ) Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tedi Lou Guest ("Guest") seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Guest asks the Court to reverse and remand the ALJ's decision, and the Commissioner seeks an order affirming the decision. For the reasons set forth below, the ALJ's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

### I. BACKGROUND

Guest was born on May 10, 1961 and has a history of permanent pacemaker for heart block in August 2011, high blood pressure, morbid obesity, non-ischemic cardiomyopathy, chronic obstructive pulmonary disease, asthma, sleep apnea, depression, and anxiety. Guest left high school after the ninth grade and earned a GED in 1994. Guest previously worked as an administrative clerk, scheduling clerk, property locator, telephone solicitor, receptionist, and data entry clerk. Guest alleges she became totally disabled on April 23, 2010 because of cardiomyopathy, pacemaker implant, congestive heart failure, depression, anxiety, asthma, and sleep apnea. Guest's insured status for DIB purposes expired on December 31, 2015, which means Guest had to show she was disabled on or before that date in order to be eligible for DIB.

Under the standard five-step analysis used to evaluate disability, the ALJ found that Guest had not engaged in substantial gainful since April 23, 2010, the alleged onset date (step one); her extreme morbid obesity, non-ischemic dilated cardiomyopathy, pulmonary artery hypertension, uncontrolled hypertension, chronic obstructive pulmonary disease, cardiac arrhythmia, maturity onset diabetes, obstructive sleep apnea, and degenerative disc disease of the lumbar spine were severe impairments (step two); but that her severe impairments did not qualify as a listed impairment (step three). The ALJ determined that prior to January 12, 2011, Guest retained the residual functional capacity (RFC) to perform light work, except that she could never crouch, kneel, crawl and climb ladders, ropes or scaffolds, could frequently climb ramps and stairs, and could occasionally balance and stoop. Subsequent to January 12, 2011, the ALJ found that Guest retained the RFC to perform sedentary work except that she could never crouch, kneel, crawl and climb ladders, ropes or scaffolds, could frequently climb ramps and stairs, could occasionally balance and stoop, needs to avoid concentrated exposure to pulmonary irritants, such as fumes, odor, dusts, and gases, and needs to avoid all exposure to dangerous or moving machinery, unprotected heights and exposure to large magnets. Id.

Given these RFCs, the ALJ concluded that prior to January 12, 2011, Guest was able to perform all of her past work as customarily performed in the national economy and (except for the data entry clerk position) as actually performed by Guest. Subsequent to January 12, 2011, the ALJ determined that Guest was able to perform her past work as a scheduling clerk, telephone solicitor, receptionist and data entry clerk as customarily performed in the national economy and the administrative clerk, scheduling clerk, telephone solicitor, and receptionist positions as actually performed by Guest (step four). The Appeals Council denied Guest's request for review on February 2, 2015. Guest now seeks judicial review of the final administrative decision of the Acting Commissioner, which is the ALJ's decision. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th

Cir. 2010).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). An ALJ's credibility determination should be upheld unless it is patently wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence,

or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ denied Guest's claim at step four, finding that Guest retains the residual functional capacity to perform her past relevant work. Guest raises numerous challenges to the ALJ's decision: (1) the ALJ erred at steps two and three by failing to utilize the special technique for assessment of mental illness, failing to consider the combination of Guest's impairments, and providing only a perfunctory analysis of the listings; (2) the ALJ failed to follow the treating physician rule; (3) the ALJ failed to follow Social Security Ruling 96-3p; (4) the ALJ's step three analysis was perfunctory; (5) the RFC finding is not supported by substantial evidence because the ALJ failed to discuss medical evidence related to Guest's mental conditions; (6) the ALJ's credibility determination was patently wrong; and (7) the ALJ's step four conclusion is not supported by substantial evidence. The Court agrees that errors in the ALJ's analysis of Guest's mental impairment and the credibility determination require remand.

**A.     Guest's Mental Impairments**

Since at least February 2009, Guest has been diagnosed with generalized anxiety disorder and chronic depression. Guest was regularly seen by a psychiatrist, Dr. Michael Martin, and has been prescribed psychiatric medication. (R. 41, 1697-1713). On June 11, 2011, Guest underwent a consultative psychological examination with a licensed clinical psychologist, Dr. Michael Ingersoll. Dr. Ingersoll stated that he reviewed none of Guest's medical records as part of his examination. (R. 1121). Guest reported having a history of depression and being followed psychiatrically by Dr. Martin for the past five years. Id. Guest stated her current medications included Zoloft and Clonazepam for her anxiety. Id. Guest reported that she is able to work on a limited basis due to her health and that she had been on the internet looking for work. (R. 1124). Dr. Ingersoll noted that Guest was fully cooperative but her "[a]ffect at times was tearful." (R. 1122). Dr. Ingersoll indicated that Guest's "mood does appear depressed." Id. Guest reported that she had daily

depressed mood with various sleep and limited socialization.  Id.  Guest related her depression as largely being secondary to ongoing health problems.  Id.  Dr. Ingersoll noted that Guest's socialization "seems somewhat limited and she seems somewhat socially isolated and withdrawn to the house environment."  (R. 1124).  Dr. Ingersoll diagnosed Guest with major depressive disorder, in partial remission.  Id.

On November 9, 2012, state agency reviewing physician Towfig Arjmand, M.D., completed a Psychiatric Review Technique assessment.  (R. 129).  Dr. Arjmand concluded that Guest's and her sister's descriptions of Guest's activities of daily living showed some limitations in daily activities but Guest "functions well independently in all respects with all limits related to physical constraints." Id.  Dr. Arjmand further concluded that the mental status exam performed by Dr. Ingersoll was "normal except for being tearful at times."  Id.  Dr. Arjmand found that concentration was the only mental ability affected.  Id.  Dr. Arjmand determined that Guest had mild limitations in maintaining concentration, persistence or pace with no limitations in activities of daily living and social functioning and no episodes of decompensation.  Id.  Dr. Arjmand found that any current impairment related to a mental disorder was not severe and that Guest was able to perform her past relevant work as an underwriter support specialist as actually performed.  (R. 129, 133).

At the hearing in September 2013, Guest testified that she has been taking Zoloft and Xanax for ten years for her depression and anxiety.  (R. 89).  Guest also stated that Dr. Martin had recently doubled her dosage of Ritalin.  (R. 96).  Guest testified that she used to see Dr. Martin every six months but was now seeing him every three months.  (R. 90).  Guest testified, "I'm sad. I'm not the person I used to be.  I used to be a very outgoing, bold person.  And now, I'm not."  (R. 97).  When asked how her depression impacted her performance at work, Guest stated: "I just feel that I did get along with others, but I tried to push them away.  There was a lot of times I didn't want to learn what they were trying to teach me because I felt I couldn't."  Id.

At step two, the ALJ determined that Guest suffered from a depressive disorder but that it was not severe. (R. 26-27). "[A]n impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Finding an impairment not severe "requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." Id., at *2. Although the ALJ found Guest's depression was non-severe, the ALJ was required to consider it when assessing Guest's RFC. Denton v. Astrue, 596 F.3d 419, 423 (7th Cir. 2010) (holding "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.").

The ALJ found, based on the assessment by state agency physician Dr. Towfig Arjmand completed on November 2, 2012 and Dr. Michael Ingersoll's consultative psychological examination on June 11, 2011, that while Guest "may well have sustained mild secondary limitations in concentration, persistence and pace, she has not sustained any limitation in activities of daily living, social functioning or any episodes of decompensation." (R. 26-27). The ALJ determined that Guest's depression did not cause any work-related limitations and he did not include any mental limitations in the RFC.

Guest argues that the ALJ improperly relied on the opinion of the state agency physician Dr. Arjmand in finding that Guest's depression was non-severe and not including any mental limitations in Guest's RFC because evidence received after Dr. Arjmand's review show considerable deterioration of Guest's mental health. The Court agrees that subsequently obtained evidence could cast doubt on the state agency consultant's earlier opinion. Treatment notes from

Dr. Martin in 2013 show that Guest's mental condition significantly deteriorated in the months after Dr. Arjmand's November 2012 assessment. For example, on April 4, 2013, six months after her last visit with Dr. Martin, Guest reported feeling hopeless and helpless. (R. 1701). Dr. Martin noted that Guest's "affect is quite sad and irritable." Id. Dr. Martin also noted "[m]uch support was provided." Id. Dr. Martin diagnosed recurrent depression, moderate to severe. Id. Dr. Martin instructed Guest to restart Ritalin and follow-up in one month. Id. Guest next saw Dr. Martin on May 2, 2013, at which time she reported that she was not doing well and felt depressed most days. (R. 1699). Guest stated that she was not taking her Ritalin because of cost. Id. Dr. Martin observed that Guest was tearful at times but nonsuicidal. Id. Dr. Martin discussed cheaper alternatives to Ritalin and noted recurrent major depression with melancholic features and medical illnesses. Id. Approximately three months later, on August 1, 2013, Guest returned to Dr. Martin for a follow-up. (R. 1697). Guest complained of feeling anxious, very down, and unstable. Guest reported being off all psychiatric medication last month. Id. Dr. Martin observed that Guest was easily tearful and overwhelmed. Id. Dr. Martin diagnosed Guest with major depressive disorder, severe without psychotic features (296.33) with multiple medical illnesses. Dr. Martin instructed Guest to continue her medications and return in 3 months. Id. Under "Assessment plan," Dr. Martin noted "[g]enuine disability." Id. The visit with Dr. Martin on August 1, 2013 is the last mental health appointment in the record.

The ALJ relied on the opinion of Dr. Arjmand but Dr. Arjmand reviewed only part of Guest's psychiatric treatment records. Dr. Arjmand did not have the benefit of Dr. Martin's 2013 treatment records and opinion because they did not exist at the time of his assessment. The 2013 treatment records show considerable deterioration of Guest's mental health. Evidence that Guest's psychiatric symptoms worsened after Dr. Arjmand's assessment might reasonably impact his opinion regarding Guest's limitations. Campbell v. Astrue, 627 F.3d 299, 309 (7th Cir. 2010)

(holding ALJ did not adequately explain why state agency reviews' opinions were entitled to greater weight than those of a treating psychiatrist where state agency psychiatrist and psychologist reviewed only part of the treatment records). In this situation, the ALJ could have called a psychological expert to testify regarding Guest's mental impairments at the hearing. The medical expert at the hearing testified that he was not rendering a specific opinion with regarding to Guest's mental impairments. (R. 75). The ALJ could have requested another state agency review which would have included the 2013 records and opinion of Dr. Martin. The ALJ did neither of these things. As result the opinion of Dr. Arjmand relied on by the ALJ to find that Guest's depression was not severe and to not include any mental limitations into the RFC was not based on a complete review of all the relevant medical evidence.

The ALJ also relied on Dr. Ingersoll's report at step two in finding that Guest's depressive disorder was not severe. (R. 26-27). Later in his decision, the ALJ cites favorably the results of Guest's consultative psychological exam with Dr. Ingersoll to evaluate her RFC. (R. 28). The ALJ wrote that Guest "told the doctor she had been looking for part-time work and while the doctor, based on her subjective complaints, diagnosed depression, he noted that claimant nevertheless managed to drive herself to the appointment, socialize up to twice per week and demonstrate normal thought process as well as attentiveness." (R. 28).

The ALJ's significant reliance on Dr. Ingersoll's June 11, 2012 assessment is also problematic because Dr. Ingersoll's report predates ample evidence showing that Guest's mental condition deteriorated over time. On April 4, 2013, Dr. Martin diagnosed recurrent depression, moderate to severe. (R. 1701). Dr. Martin noted that Guest's affect was "quite sad and irritable" and "[m]uch support was provided." Id. On May 2, 2013, Guest reported feeling depressed most days and was observed to be tearful. (R. 1699). Dr. Martin diagnosed recurrent major depression with melancholic features with medical illnesses. Id. Then, on August 1, 2013, Guest reported

feeling anxious, very down, and unstable. (R. 1697). Dr. Martin observed that Guest was easily tearful and overwhelmed. Id. Dr. Martin diagnosed Guest with major depressive disorder, severe without psychotic features with multiple medical illnesses. Id. Dr. Martin also noted that he believed Guest suffered from a "genuine disability." Id. The Court finds that the ALJ erred in relying on Dr. Ingersoll's earlier assessment to the exclusion of these more recent records from her treating psychiatrist showing that Guest's depression was not in partial remission.

Reinforcing the need for remand here is the ALJ's inadequate analysis of Dr. Martin's treatment records. The ALJ was inappropriately selective in discussing the psychiatric evidence on which he based his opinion, and he ignored Dr. Martin's opinion of disability. Guest's psychiatrist, Dr. Martin, had diagnosed Guest with major recurrent depression and anxiety and opined that she had a "genuine disability." (R. 1697). The ALJ selectively cited to Dr. Martin's notes. Where his notes indicated abnormal findings, the ALJ disregarded them. Where favorable portions of Dr. Martin's notes could be construed against Guest, the ALJ highlighted those notes. In his review of Dr. Martin's notes, the ALJ only noted: (1) Dr. Martin's October 6, 2011 progress note which concluded that Guest was doing "wonderfully" on an antidepressant; (2) Dr. Martin's April 5, 2012 progress note which stated Guest was doing well on antidepressants; (3) Dr. Martin's October 4, 2012 progress note which indicated Guest reported doing well on antidepressants; and (4) Dr. Martin's May 2, 2013 progress note which concluded that Guest's new complaints of depression were due to noncompliance with medication because of cost. (R. 28-29, 1699, 1703, 1705, 1707). The ALJ ignored Dr. Martin's treatment notes from April and August, 2013 which showed Guest's depression had worsened. Dr. Martin's April 4, 2013 finding that Guest had moderate to severe recurrent depression (R. 1701) and his diagnosis of major depressive disorder conflicts with the ALJ's finding that Guest had non-severe depression. Dr. Martin's major depressive disorder diagnosis indicates that Guest's symptoms "cause clinically significant distress

or impairments in social, occupational, or other important areas of functioning." Roberts v. Colvin, 2015 WL 925921, at *6 (N.D. Ill. Dec. 18, 2015) (citing DSM-IV). These assessments by Guest's treating psychiatrist are significant and they cannot be ignored. The ALJ was required to address them in his discussion of the opinion evidence. The ALJ's selective consideration of Dr. Martin's findings is a basis for remand. Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) (holding "[a]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'").

      The ALJ also erred when he failed to address Dr. Martin's statement from August 1, 2013 that Guest was suffering from a "genuine disability." (R. 1697). The ALJ's decision does not indicate that he considered the opinion of Dr. Martin at all. The Commissioner asserts that the ALJ did not fail to consider Dr. Martin's "opinion" because Dr. Martin never offered an opinion. (Doc. 27 at 4). The Commissioner is correct that Dr. Martin's assertion that Guest is disabled is not a medical opinion and does not tell the agency what tasks Guest can and cannot perform. Garrison v. Heckler, 765 F.2d 710, 713 (7th Cir. 1985). Nevertheless, "[e]ven if [the treating physician's] opinion of [the claimant's] ability to work is not a 'medical opinion' under the regulatory checklist, that does not mean that the ALJ should have ignored the statement. Although the ALJ does not give special deference to such opinions, he still must consider opinions from medical sources in determining the claimant's residual functional capacity." Roddy v. Astrue, 705 F.3d 631, 638 (7th Cir. 2013) (internal quotations marks and citations omitted); see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) (stating "[t]he pertinent regulation states that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' 20 C.F.R. § 404.1527(e)(1). That's not the same thing as saying that such a statement is improper and therefore to be ignored."). The ALJ improperly ignored Dr. Martin's statement that Guest has a genuine disability. Barnett v. Barnhart, 381 F.3d 664, 689 (7th Cir. 2004) (holding

"[a]lthough a medical opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling weight, the ALJ must consider the opinion and recontact the doctor for clarification if necessary.").

On remand, the ALJ shall reevaluate the severity of Guest's mental impairments and their impact on her RFC, considering all the evidence of record, including a sufficient evaluation of Dr. Martin's most recent treatment notes. The ALJ shall consider Guest's mental impairment singularly and in combination with her physical impairments to determine whether Guest is disabled. The ALJ may request that Dr. Martin provide additional evidence and/or further clarification of his opinion and recent treatment notes concerning what Guest can still do despite her mental impairment-related limitations.

**B.     Subjective Symptom Evaluation**

Guest contends that the ALJ erred in assessing her credibility. The Social Security Administration recently updated its guidance on evaluating symptoms in disability claims. SSR 16-3p, 2016 WL 1119029. The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policy to "clarify that subjective symptoms evaluation is not an examination of an individual's character." Id. at *1. Though the new ruling post-dates the ALJ's decision in this case, the application of a new social security regulation to matters on appeal is appropriate where the regulation is a clarification of existing law rather than a change to it. Pope v. Shalala, 998 F.2d 473, 482-83 (7th Cir. 1993), overruled on other grounds by Johnson v. Apel, 189 F.3d 561 (7th Cir. 1999). Here, the new SSR specifies that its elimination of the term "credibility" in subjective symptom evaluation is intended to "clarify" its application of existing rules and to "more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029 at *1. Moreover, SSR 96-7p and 16-3p are not inconsistent with one another. A comparison of the two rulings shows substantial consistency, both in the two-step process to be followed and in the factors

to be considered in determining the intensity and persistence of a claimant's symptoms. Therefore, it is appropriate to consider the ALJ's analysis of Guest's subjective complaints in light of the new guidance the Administration has provided.

In this case, the ALJ found that Guest's statements about the intensity, persistence and limiting effects of her symptoms were "not fully credible." (R. 29). In explaining his conclusion," the ALJ relied on statements made by Guest and her sister, Julie Guest. Id. Under SSR 16-3p, the ALJ must still consider the claimant's daily activities in evaluating the intensity, persistence and limiting effects of a claimant's symptoms. SSR 16-3p, 2016 WL 1119029 at *7. In discussing Guest's daily activities, the ALJ misrepresented her reported daily activities. The ALJ pointed out that Guest's sister indicated that Guest "goes dancing once per month, volunteers at the shelter and takes walks three times per week." (R. 29). This is a misrepresentation of Guest's activities as reported by her sister. In Exhibit 8E dated October 25, 2012, cited by the ALJ, Guest's sister clarifies that Guest "rarely volunteers due to fatigue and does not go out dancing." (R. 316). Moreover, in her October 23, 2012 Function Report, Guest states that she seldom dances, rarely walks, and no longer volunteers. (R. 327). The ALJ also noted that Guest could cook, wash dishes, do laundry in the basement, shop for food, and walk a dog. (R. 29). The ALJ ignored Guest's and her sister's repeated statements that while Guest does her own laundry, she needs someone to take her laundry up and down the basement stairs for her. (R. 267, 314, 325, 331). Further, the ALJ's finding that Guest walks her dog misstates the record. At the hearing, Guest testified that she does not walk her dog. (R. 81). In her Function Reports dated April 24, 2012 and October 23, 2012, Guest explained that a friend or relative walks her dog. (R. 266, 324). The Court finds that it was error for the ALJ to mischaracterize Guest's daily activities to justify his credibility conclusion. Terry v. Astrue, 580 F.3d 471, 477-78 (remanding in part because the ALJ mischaracterized evidence as inconsistent with claimant's testimony). On remand, the ALJ must reevaluate Guest's credibility

after giving accurate consideration to her daily activities.

Guest also asserts that the ALJ improperly discredited her statements about her symptoms and their limiting effects because she received unemployment compensation following her alleged onset date. Under SSR 16-3p, it is appropriate for an ALJ to "compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements an individual made under other circumstances." SSR 16-3p, 2016 WL 1119029, at *8 (March 16, 2016). A claimant's application for unemployment benefits is a representation to "state authorities and prospective employers that he is able and willing to work." Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005). While an ALJ may "give some consideration to [an applicant's pursuit of unemployment benefits] when assessing his credibility, . . . attributing a lack of credibility to such action is a step that must be taken with significant care and circumspection. All of the surrounding facts must be carefully considered." Scrogham v. Colvin, 765 F.3d 685, 699 (7th Cir. 2014). At the hearing in this case, the ALJ asked Guest questions about the unemployment compensation. (R. 99-101). Guest testified that at that time, she was seeking a part-time job of "about three hours a day" that was simple and did not require sustained focus, a lot of standing, and any walking. (R. 100). Nevertheless, the ALJ found that Guest's "testimony further revealed that she received unemployment compensation through November 2012 thereby indicating that she was able to and seeking full time employment." (R. 29). Here, the ALJ failed to adequately examine the "surrounding facts" by ignoring the fact that Guest was seeking only part-time work. Guest pursuit of part-time work does not necessarily mean she was capable of full-time work. Pierce v. Colvin, 739 F.3d 1046, 1050 (7th Cir. 2014) (rejecting the idea that the ability to work part-time casts doubt on claimant's credibility); Turnman v. Colvin, 2015 WL 248859, at *4 (N.D. Ill. Jan. 20, 2015). Under these circumstances, which the ALJ failed to consider, Guest's stated ability to work part-time does not cast doubt on her credibility. On remand, the ALJ shall consider all the facts surrounding

Guest's receipt of unemployment compensation before discounting her credibility on this basis.

## III.  CONCLUSION

For the reasons and to the extent stated above, Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security [19] is granted.  Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed.  The Clerk is directed to enter judgment in favor of Plaintiff Tedi Lou Guest and against Defendant Acting Commissioner of Social Security.

E N T E R:

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: May 24, 2016**